UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE POKEMON COMPANY INTERNATIONAL, INC., <br><br>Petitioner, <br><br>v. <br><br>SHOPIFY, INC., <br><br>Respondent. | Case No. 16-mc-80272-KAW <br><br>**ORDER DENYING MOTION TO COMPEL** <br><br>Re: Dkt. No. 1 |

On December 30, 2016, Petitioner The Pokémon Company International, Inc. ("Pokémon") filed a motion to compel compliance with a subpoena issued against Respondent Shopify, Inc. ("Shopify") (Pet.'s Mot., Dkt. No. 1.) The subpoena was issued in connection with *The Pokémon Company International, Inc. v. Tee Turtle LLC*, Case No. 2:15-cv-1419-RSL, a copyright infringement case currently pending in the Western District of Washington. (*See* Heilman Decl., Exh. B., Dkt. No. 3.) The Court deems the matter suitable for disposition without hearing pursuant to Civil Local Rule 7-1(b). Having considered the papers filed by the parties and the relevant legal authority, the Court DENIES the motion to compel, for the reasons set forth below.

**I.   BACKGROUND**

Pokémon manufactures, markets, and distributes children's entertainment products based on characters such as Pikachu, Pokémon's principal mascot. (Heilman Decl., Exh. A, *Tee Turtle* Compl. ¶¶ 6, 14.) Tee Turtle is a St. Louis, Missouri-based online apparel retailer featuring designs derived from various anime, gaming, and pop culture properties. (*Tee Turtle* Compl. ¶ 21.) Tee Turtle's designs have incorporated various Pokémon characters, including Pikachu, Charmander, Eevee, Mew, Squirtle, Vulpix, and Bulbasaur. (*Tee Turtle* Compl., Exh. B.) In September 2015, Pokémon brought a copyright infringement suit against Tee Turtle for copyright

1  infringement based on Tee Turtle's use of the Pokémon characters in its designs. (Heilman Decl. ¶ 3.)

2  Shopify is a "cloud-based, multi-channel commerce platform" used by merchants to design, set-up, and manage stores. (Zipes Decl. ¶ 1, Dkt. No. 7.) Pokémon believes that Tee Turtle uses Shopify's services for its online sales. (Heilman Decl. ¶ 4.) Shopify is a Canadian corporation, and its principal place of business is in Ottawa, Canada. (Zipes Decl. ¶ 3.) While Shopify lists a San Francisco office on its website, Shopify asserts that the San Francisco office is the principal place of business for Shopify's wholly-owned U.S. subsidiary, Shopify (USA) Inc. (Zipes Decl. ¶ 4; Heilman Decl. ¶ 5, Exh. C.) Shopify further states that only one employee at Shopify (USA) Inc. works on Shopify's e-commerce business, while the remaining employees work on a mobile and messaging platform to help merchants run their businesses. (Zipes Decl. ¶ 5.)

On September 6, 2016, Pokémon served a subpoena on Shopify at the then-current San Francisco address. (Heilman Decl. ¶ 5, Exh. D.) The subpoena was served on "Jason Baker," who allegedly represented that he was authorized to accept service. (Heilman Decl., Exh. D.) Shopify asserts that neither Shopify nor Shopify (USA) Inc. has an employee named "Jason Baker," although Shopify (USA) Inc. does have an employee named "Josh Baker." (Zipes Decl. ¶ 6.) Josh Baker is a front-end developer, and he is not an officer, manager, or general agent of either Shopify or Shopify (USA) Inc., and lacks authority to accept service of process for Shopify. (Zipes Decl. ¶ 6.)

After Shopify failed to respond to the subpoena, Pokémon's counsel, Mr. Garrett Heilman, contacted Shopify via a phone number on Shopify's website. (Heilman Decl. ¶ 8.) Mr. Heilman spoke with Freya Bauer, who informed him that Shopify did not have a legal team in the United States, and directed counsel to e-mail legal@shopify.com. (Heilman Decl. ¶ 8.) On November 3, 2016, Mr. Heilman e-mailed Shopify at the provided address, identifying the subpoena and attaching the proof of service. (Heilman Decl. ¶ 9, Exh. F.)

On November 4, 2016, Shopify's counsel, Erin Zipes, responded, stating that the November 3, 2016 e-mail was the first time Shopify had seen the subpoena. (Heilman Decl., Exh.

2

G.)  Ms. Zipes explained that Shopify was a Canadian corporation, and that it was subject to Canadian privacy laws.  Ms. Zipes also noted that enforcement of the subpoena "is contingent upon authorization by the Court of territorial jurisdiction," and that it could not comply with the subpoena "absent due process," although Shopify was willing "to comply with any properly issued court order or subpoena . . . ."  (Heilman Decl., Exh. G.)

On November 8, 2016, Mr. Heilman responded, noting Shopify's privacy concerns.  Mr. Heilman cited to the Federal Rules of Civil Procedure, and explained that Shopify had "subjected itself to the personal jurisdiction of U.S. courts in California by conducting business there, directly and/or through its U.S. affiliates, and registering agents there."  (Heilman Decl., Exh. H.)

On November 14, 2016, Ms. Zipes informed Mr. Heilman that Shopify would comply with any properly issued subpoena, but that if Pokémon "did not wish to have [its] subpoena issued by a court of competent jurisdiction in Canada then at this time [Shopify was] unable to respond to [Pokémon's] subpoena."  (Heilman Decl., Exh. I.)  Ms. Zipes also stated that if Shopify could comply with the subpoena without breaching privacy obligations to its merchants, it would do so.

After further discussions by e-mail and phone, on December 6, 2016, Ms. Zipes explained that Shopify would not respond to the subpoena because the subpoena was not properly served, as the San Francisco address belonged to Shopify (USA) Inc.  (Heilman Decl., Exh. N.)  Further, Ms. Zipes stated that there was no Jason Baker who worked there, and that Shopify (USA) Inc. was not the owner or custodian of the information Pokémon was seeking.  Finally, Ms. Zipes noted that Shopify did have an agent for service of process in the United States, and that it could not otherwise comply with the improperly served subpoena.

On December 30, 2016, Pokémon filed the instant motion to compel.  (Dkt. No. 1.)  On January 13, 2017, Shopify filed its opposition, arguing that Pokémon's motion should be denied because: (1) the Court lacks personal jurisdiction over Shopify, (2) Pokémon failed to properly serve Shopify or Shopify (USA) Inc., and (3) assuming Pokémon properly served Shopify (USA) Inc., Shopify (USA) Inc. lacks possession control of the subpoenaed records.  (Resp.'s Opp'n at 1-2, Dkt. No. 6.)  On January 20, 2017, Pokémon filed its reply.  (Pet.'s Reply, Dkt. No. 8.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery propounded by subpoena. The subpoena must state the place where compliance is required, which must be within 100 miles of where the subpoenaed party resides, is employed, or regularly transacts business in person. Fed. R. Civ. P. 45(a)(1)(A)(iii). Rule 45 requires that a subpoena be issued by the court where the underlying action is pending, but that challenges to the subpoena are to be heard by the district court where compliance with the subpoena is required. Fed. R. Civ. P. 45(a)(2), (d)(3)(A).

## III. DISCUSSION

### A. Jurisdiction

First, the Court finds that Pokémon's motion to compel must be denied because it lacks jurisdiction over Shopify. "Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 134 S. Ct. 746, 753 (2014). California's long-arm statute permits the exercise of personal jurisdiction to the full extent allowed under the United States constitution. *Id.*

"For the exercise of personal jurisdiction over a defendant, due process requires that the defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015). Personal jurisdiction can be either "general" or "specific." *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 415-16 (1984). With respect to corporations, general jurisdiction exists where the corporations' "affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum state." *Daimler*, 134 S. Ct. at 754 (internal quotation omitted). In other words, the corporations "continuous corporate operations within a state are so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities." *Id.* (internal quotation omitted). By contrast, specific jurisdiction exists where the case "arises out of or relates to the defendant's contacts with the forum." *Ranza*, 793 F.3d at 1068 (internal quotation omitted).

### i. General Jurisdiction

4

1    First, the parties dispute whether there is general jurisdiction over Shopify in California, as
2    Shopify is a Canadian corporation with its principal place of business in Ottawa, Canada.  (*See*
3    Zipes Decl. ¶ 3.)  Pokémon does not assert that there is general jurisdiction over Shopify based on
4    Shopify's contacts with California; instead, Pokémon argues that the contacts of Shopify (USA)
5    Inc. should be imputed to Shopify, its parent company.  (Pet.'s Reply at 2.)  The parties do not
6    dispute that the Court would have general jurisdiction over Shopify (USA) Inc.; indeed, Shopify
7    admits that Shopify (USA) Inc.'s principal place of business is in San Francisco, California.
8    (Zipes Decl. ¶ 4.)  Thus, at issue is whether Shopify (USA) Inc.'s contacts may be imputed to
9    Shopify.

10   In general, "[t]he existence of a parent-subsidiary relationship is insufficient, on its own, to
11   justify imputing one entity's contacts with a forum state to another for the purpose of establishing
12   personal jurisdiction." *Ranza*, 793 F.3d at 1070.  This is because "'[a] basic tenet of American
13   corporate law is that the corporation and its shareholders are distinct entities." *Id.* (quoting *Dole*
14   *Food Co. v. Patrickson*, 538 U.S. 468, 474 (2003)).  The courts recognize, however, that "the veil
15   separating affiliated corporations may . . . be pierced to exercise personal jurisdiction over a
16   foreign defendant in certain limited circumstances." *Id.* at 1071.

17   The Ninth Circuit previously permitted a plaintiff to pierce the corporate veil for
18   jurisdictional purposes under two separate tests: an "agency" test and an "alter ego" test. *Id.*
19   Under the agency test, a plaintiff had to show that the subsidiary "performed services that were
20   sufficiently important to the foreign corporation that if it did not have a representative to perform
21   them, the corporation's own officials would undertake to perform substantially similar services."
22   *Id.* (internal quotation and modifications omitted).  Under the alter ego test, the Court considers
23   "whether the parent and subsidiary are not really separate entities," such as by looking at the
24   parental control of the subsidiary's internal affairs or daily operations.  *Id.* (internal quotation
25   omitted).

26   In *Daimler*, the Supreme Court invalidated the agency test for establishing general
27   jurisdiction, explaining that the focus on whether the subsidiary's services were important "stacks
28   the deck, for it will always yield a pro-jurisdiction answer: Anything a corporation does through

5

1   an independent contractor, subsidiary, or distributor is presumably something that the corporation
2   would do 'by other means' if the independent contractor, subsidiary, or distributor did not exist."
3   134 S. Ct. at 759 (internal quotation omitted).  Following *Daimler*, the Ninth Circuit has
4   recognized that the agency test is no longer available to establish jurisdiction over a parent
5   company, as "[s]uch a theory . . . sweeps too broadly to comport with the requirements of due
6   process."  *Ranza*, 793 F.3d at 1071.

7   Pokémon asserts that Shopify (USA) Inc.'s contacts can be imputed to Shopify under the
8   alter ego test.[1]  (Pet.'s Reply at 2-3.)  Under the alter ego test, Pokémon "must make out a prima
9   facie case (1) that there is such unity of interest and ownership that the separate personalities of
10  the two entities no longer exist and (2) that failure to disregard their separate identities would
11  result in fraud or injustice."  *Ranza*, 793 F.3d at 1073 (internal quotation and modifications
12  omitted).  The first prong "requires a showing that the parent controls the subsidiary to such a
13  degree as to render the latter the mere instrumentality of the former."  *Id.* (internal quotation
14  omitted).  In short, the parent must exercise pervasive control, *i.e.*, "when a parent corporation
15  dictates every facet of the subsidiary's business – from broad policy decisions to routine matters of
16  day-to-day operation."  *Id.* (internal quotation omitted).  Notably, "[t]otal ownership and shared
17  management personnel are alone insufficient to establish the requisite level of control."  *Id.*  Thus,
18  even when a parent corporation is involved directly in decision-making about its subsidiary's
19  holdings, but the entities still observe the corporate formalities necessary to maintain corporate
20  separateness, a plaintiff does not meet the alter ego test.  *Id.*

21  In *Doe v. Unocal Corp.*, the Ninth Circuit found that the plaintiff did not make a prima
22  facie case of alter ego where the plaintiff showed that the parent corporation was involved in its
23  subsidiaries' acquisitions, divestments, and capital expenditures; formulated general business
24  policies and strategies applicable to its subsidiaries; provided loans and other types of financing to
25  its subsidiaries; maintained overlapping directors and officers with its subsidiaries; and referred to

---

[1] The Court assumes that Pokémon does not attempt to assert the agency test to establish general jurisdiction, given the Supreme Court's *Daimler* decision.  To the extent Pokémon is asserting the agency test to establish general jurisdiction, the Court rejects any such argument in light of *Daimler* and *Ranza*.

6

1 subsidiaries as divisions of the parent company in its annual report. 248 F.3d 915, 927-28 (9th

2 Cir. 2001). In *Ranza*, the Ninth Circuit likewise found that the plaintiff did not satisfy the alter

3 ego test where the plaintiff presented no evidence that the parent company and subsidiary failed to

4 observe their respective corporate formalities. 793 F.3d at 1074. There, the Ninth Circuit

5 acknowledged that the parent corporation was "heavily involved" in its subsidiary's operations,

6 including controlling the subsidiary's overall budget, having approval authority for large

7 purchases, establishing general human resource policies, being involved in some hiring decisions,

8 operating information tracking systems that all subsidiaries used, and ensuring that its brand was

9 marketed consistently throughout the world. *Id.* This level of involvement, however, was

10 insufficient to show that the entities failed to observe separate corporate formalities, particularly

11 where the subsidiary negotiated its own contracts and licenses, made routine purchasing decisions

12 without the parent corporation's consultation, and had its own human resources division that

13 handled day-to-day employment issues, including hiring and firing. *Id.*

14 Here, Pokémon asserts that Shopify and Shopify (USA) Inc. do not have separate

15 personalities because: (1) Shopify listed the San Francisco office on its website without making

16 any mention of a separate entity; (2) the two entities share the same principal officers and

17 executives,[2] as well as legal counsel; and (3) the two entities collect information under the same

18 privacy policy. (Pet.'s Reply at 2-3.) This showing, however, is inadequate to establish the

19 requisite level of control required to satisfy the alter ego test; there is no evidence that Shopify and

20 Shopify (USA) Inc. do not observe their respective corporate formalities. As discussed in *Unocal*

21 and *Ranza*, overlap in officers and use of general business policies alone is insufficient to establish

22 a prima facie case; similarly, the fact that Shopify lists the San Francisco office without

23 mentioning that it is a separate entity is not evidence that Shopify exercises day-to-day control

24 over Shopify (USA) Inc. *Cf. Maple Leaf Adventures. Corp. v. Jet Tern Marine Co., Ltd.*, Case No.

---

[2] In support of this argument, Pokémon provides a copy of the Statement of Information for Shopify (USA) Inc., which lists Shopify (USA) Inc.'s corporate officers. (1/20/17 Heilman Decl. ¶ 6, Exh. C, Dkt. No. 9.) Pokémon fails, however, to identify who *Shopify's* corporate officers are; thus, the Court is unable to determine if the corporate officers do in fact overlap. For the sake of argument, the Court will assume that there is complete overlap of management between Shopify and Shopify (USA) Inc.

15-cv-2504-AJB-BGS, 2016 WL 3063956, at *4, 8 (S.D. Cal. Mar. 11, 2016) (finding inadequate evidence of an alter ego relationship where the subsidiary held itself out as "Selene Ocean Trawlers," the same name under which the parent corporation did business; the "About Selene" section was exclusively devoted to the parent corporation's history; the subsidiary's website held itself out as the factory direct representative for the parent corporation's products; the parent corporation's CEO was listed first on the subsidiary's website; and the parent corporation advertised the subsidiary's opening). Because there is no showing that the corporate separation between Shopify and Shopify (USA) Inc. is not real, Pokémon has not satisfied the "unity of interest and ownership" prong of the alter ego test, and the Court need not analyze the "fraud or injustice" prong. *See Ranza*, 793 F.3d at 1075 n.9. The Court concludes that Pokémon has failed to satisfy the alter ego test, and therefore the Court lacks general jurisdiction over Shopify.

### ii. Specific Jurisdiction

Next, the parties dispute whether the Court has specific jurisdiction over Shopify. In order to establish specific jurisdiction, the Ninth Circuit applies a three-prong test:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (internal quotation omitted).

Here, Pokémon contends that Shopify has contacts to California via its subsidiary, Shopify (USA) Inc., as well as by listing the San Francisco office as a Shopify address and by having an annual conference for its partners and developers in San Francisco. (Pet.'s Reply at 4-5.) Pokémon further argues that the subpoena arises out of or results from Shopify's contacts in the forum. (*Id.* at 5.) The Court disagrees that the subpoena arises out of or results from Shopify's contacts in the forum. Pokémon seeks documents relating to inventory information of and merchandise sold by Tee Turtle, a Missouri corporation, in connection with the copyright

infringement lawsuit filed in Washington based on harms suffered by Pokémon in Washington. (*Tee Turtle* Compl. ¶¶ 2, 4.) Thus, the subpoena arises solely out of Shopify's relationship with Tee Turtle, a Missouri corporation, not with any California contacts. The activities of Shopify (USA) Inc., which works on a messaging platform, and the annual conference held by Shopify in San Francisco, are wholly irrelevant to this underlying copyright infringement lawsuit. The Court therefore concludes that Pokémon has failed to establish specific jurisdiction as well. Because the Court lacks personal jurisdiction over Shopify, the Court DENIES Pokémon's motion to compel.

### B. Service

Even assuming that the Court had personal jurisdiction over Shopify, the Court finds that Pokémon's motion to compel must also be denied because Pokémon has failed to effect proper service on Shopify.

"If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party." Fed. R. Civ. P. 45(a)(4); *see also* Fed. R. Civ. P. 45 advisory committee note (1991) ("The purpose of such [prior] notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things."). "Under Federal Rule of Civil Procedure . . . 45(b), a subpoena directed to a corporation or unincorporated association may be served by delivering a copy to an officer, managing agent, general agent, or any other agent authorized by appointment or by law, and mailing a copy to the defendant." *NGV Gaming, Ltd. v. Upstream Point Molate, LLC*, No. C-04-3955 SC (JCS), 2009 WL 428550, at *2 (N.D. Cal. Nov. 24, 2009).

#### i. Agency

First, Pokémon argues that Shopify should be deemed to have been served because it served the subpoena on Shopify (USA) Inc. (Pet.'s Mot. at 6; Pet.'s Reply at 8.) "Under California law, a foreign corporation may be served by serving the foreign corporation's 'general manager in this state.'" *Halo Elecs., Inc. v. Bel Fuse Inc.*, 2010 WL 2605195, at *1 (N.D. Cal. June 28, 2010) (quoting Cal. Corp. Code § 2110). Service on a general manager is satisfied where "'the agent

9

served is of sufficient character and rank to make it reasonably certain that the defendant will be appraised of the service made.'" *Id.* (quoting *Cosper v. Smith & Wesson Arms Co.*, 53 Cal. 2d 77, 83 (1959)). Several courts have found service of an initial complaint and summons served on a California agent to be sufficient where the agent was affiliated with the parent corporation as an intended outlet, sales agent, or distributor, although at least one court has questioned whether service on a California agent would be adequate for "a Rule 45 subpoena, which has service requirements that courts have construed more narrowly . . . ." *Fujikura Ltd. v. Finisar Corp.*, Case No. 15-mc-80110-HRL (JSC), 2015 WL 5782351, at *6 (N.D. Cal. Oct. 5, 2015).

Ultimately, the Court need not decide whether Shopify (USA) Inc. is Shopify's agent because the Court finds that Pokémon failed to properly serve Shopify (USA) Inc. Here, Pokémon served "Jason Baker," who apparently stated that he was authorized to accept service. (Heilman Decl., Exh. D.) Shopify asserts, and Pokémon does not dispute, that there is no Jason Baker who works for either Shopify or Shopify (USA) Inc, only a Josh Baker. (Resp.'s Opp'n at 11-12.) Thus, it is not clear Pokémon even served an employee of Shopify (USA) Inc. Even assuming that Pokémon in fact served Josh Baker, there is no showing that Mr. Baker is authorized to accept service as he is not an officer or a designated agent of Shopify (USA) Inc.[3] (*Id.*) Thus, the Court concludes that Shopify cannot be deemed to have been served by virtue of service on Shopify (USA) Inc., as Pokémon failed to properly serve Shopify (USA) Inc.

### ii. Ostensible Authority

Next, Pokémon contends that Shopify is still bound by service on Jason Baker because it identified the San Francisco office as its own on its website, and did not contest service until December, following a month of meet-and-confer process. (Pet.'s Mot. at 7, Pet.'s Reply at 7.) Thus, Pokémon asserts that Shopify imbued Jason Baker with "ostensible authority." (*Id.*)

California Civil Code § 2317 defines ostensible authority as "such as a principal, intentionally or by want of ordinary care, causes or allows a third person to believe the agent to possess." Further, "[o]stensible authority must be established through the acts or declarations of

---

[3] Josh Baker is not listed as an officer or agent for service of process on Shopify (USA) Inc.'s Statement of Information. (1/20/17 Heilman Decl., Exh. C.)

the principal and not the acts or declarations of the agent." *Preis v. Am. Indem. Co.*, 220 Cal. App. 3d 752, 761 (1990). Where a principal knows that the agent held "himself out as clothed with certain authority, and remains silent, such conduct on the part of the principal may give rise to liability." *Id.*

The Court disagrees that Pokémon has established ostensible authority. While Pokémon argues that Shopify was "silent" about service and therefore "imbued Mr. Baker with ostensible authority," the e-mail record is to the contrary. (Pet.'s Mot. at 7.) In Ms. Zipes's first e-mail response to Mr. Heilman's query about the subpoena, she states in the very first paragraph that "we have no 'Jason Baker' who works at Shopify," thus contradicting any alleged statement by Jason Baker that he had authority to accept service. (Heilman Decl., Exh. G.) While Shopify may not have explicitly challenged service, by stating that the individual who allegedly received service was not an employee of Shopify, Shopify was denying the basis of service (*i.e.*, that Pokémon had served Shopify by serving Jason Baker). From that point on, Pokémon was on notice that service might not be proper. The Court therefore rejects Pokémon's ostensible authority argument.

### iii. Actual Notice

Finally, Pokémon argues that Shopify should be compelled to comply with the subpoena because it received actual notice of the subpoena when Mr. Heilman e-mailed Shopify on November 3, 2016, informing them of the subpoena. (Pet.'s Reply at 9.) In support, Pokémon cites to *Chan v. Society Expeditions, Inc.*, where the Ninth Circuit found that under Rule 4, service of a complaint was sufficient where the plaintiff personally served the owner and president of the defendant corporation, but had failed to mention his status as the owner and president of the defendant corporation in the affidavit of service. 39 F.3d 1398, 1404 (9th Cir. 1994). The Ninth Circuit found that this "technical defect . . . d[id] not justify dismissal unless a party is able to demonstrate actual prejudice." *Id.*

*Chan* is inapposite. First, it concerns service of an initial complaint and summons under Rule 4, not a subpoena under Rule 45. *See Fujikura Ltd.*, 2015 WL 5782351, at *6 (noting that the service requirements of a Rule 45 subpoena have been construed more narrowly than service of an initial complaint and summons). Second, *Chan* involved actual service on the owner and

11

president, with the "technical defect" being the failure to identify his status as owner and president on the affidavit of service. *See* 39 F.3d at 1404. The instant case involves a far different situation where Shopify was possibly *never* served, as the service was on an individual who may not have even worked for Shopify or Shopify (USA) Inc., and in any case, lacked the authority to accept service. This is far from a "technical defect" that Pokémon asserts; this would constitute failure to serve altogether.

Moreover, the Court rejects Pokémon's contention that "actual notice" alone is sufficient to require compliance with a subpoena that is not properly served. *See Fujikura Ltd.*, 2015 WL 5782351, at *7 (finding that the defendant's "insistence that . . . notice is enough for a complaint and therefore must be enough for a subpoena is wrong"). Taking this argument to its logical extreme, service would never be needed because no one would be able to oppose a motion to compel a response to a subpoena on the basis of failure to serve as the motion to compel itself would give the respondent actual notice of the subpoena. Pokémon cites no authority for such a proposition, and the Court finds it, to use a Pokémon term, quite Farfetch'd indeed.

The Court therefore concludes that the motion to compel must be denied because the subpoena was not properly served on Shopify.

### IV.     CONCLUSION

For the reasons stated above, the Court DENIES Pokémon's motion to compel because it lacks jurisdiction over Shopify, and because the subpoena was not properly served on Shopify.[4]

IT IS SO ORDERED.

Dated: February 22, 2017

_____
KANDIS A. WESTMORE
United States Magistrate Judge

---

[4] Given these deficiencies, the Court need not determine whether Shopify (USA) Inc. has possession or custody of the records being sought, or the legal right to demand them.

12